# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RICARDO VÉLEZ-RAMOS (1) <br><br> Defendant. | CRIMINAL NO. 18-767 (PAD) |

## MEMORANDUM AND ORDER

Delgado-Hernández, District Judge.

Before the court is the defendant's "Motion for De Novo Review of U.S. Magistrate Judge's Detention Order and Memorandum of Points and Authorities" (Docket No. 98). For the reasons explained below, defendant shall be released pending trial under the conditions included in Section III of this Memorandum and Order.

## I. BACKGROUND

On December 11, 2018, defendant, Ricardo Vélez-Ramos (1), a convicted felon, was charged with one count of illegal possession of a firearm and ammunition, to wit, a black Aeroprecision pistol, model LLC, serial number V0841867, 5.56 caliber, and 74 rounds of 5.56 caliber ammunition in violation of 18 U.S.C. § 922(g)(1), § 924(a)(2), and § 2 (Docket No. 25).[1] The same day, U.S. Magistrate Camille L. Vélez-Rivé presided over a detention hearing and denied defendant's request for bail, finding that he posed a serious risk of danger to the community (Docket Nos. 33, 37 and 38).[2]

---

[1] According to the government, defendant's brother, co-defendant Edgardo Vélez-Ramos (2), was carrying the firearms and ammunition up toward the apartment where this defendant was, with the purpose of giving the rifle-type firearm to defendant who is a convicted felon.

[2] In preparing this Memorandum and Order, the court listened to the recording of the hearings held before the Magistrate Judge on December 11, 2018. With limited exceptions and contrary to the U.S. District Judges, Magistrate Judges do not have a Court

On May 5, 2019, defendant requested a *de novo* bail hearing (Docket No. 98). The hearing was set for May 21, 2019 at 9:00 a.m. and held on May 28, 2019 at 9:30 a.m. (Docket Nos. 103, 107). The government proceeded via proffer and requested detention (Docket No. 110). Defendant presented the testimony of his wife, Ms. Damaris Jiménez-Morales. Id. Both parties argued their positions. Id. Based on the information received during the hearing, the court ordered that defendant remain in custody pending further record review. Id. All things carefully considered, the court is persuaded that defendant should be granted bail.

## II. DISCUSSION

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156, permits detention of a defendant pending trial if no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any other person and the community. 18 U.S.C. §§ 3142(b) and (e). The government must establish risk of flight by a preponderance of the evidence; and/or dangerousness by clear and convincing evidence. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991). Where probable cause is found to believe that a defendant has committed a crime listed or in the circumstances set forth in 18 U.S.C. § 3142(e), a rebuttable presumption arises that no conditions or combination of conditions exist that will reasonably assure the appearance of the defendant and the safety of the community.

This is not a presumption case, for the offense is not listed in 18 U.S.C. §§ 3142(e)(2) and (3), as an offense to which the detention presumption applies. However, the statute authorizes

---

Reporter present during the numerous proceedings held before them. Therefore, unless a transcript is requested following the applicable rules and regulations, no transcript is prepared or available for those proceedings. The content of the hearing, however, is always recorded using a Digital Court Recording "DCR" program. District Judges have immediate access to DCR audio files, and may listen to the audio files when reviewing a determination made by a Magistrate Judge.

pretrial detention in cases that involve a felony that is not otherwise a crime of violence that involves the possession or use of a firearm or destructive device (as those terms are defined in Section 921), or any other dangerous weapon. 18 U.S.C. § 3142(f)(1)(E). In making a detention determination, the court must consider the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the danger to any other person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Review of a magistrate judge's release order is *de novo*. United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990).

1. Nature and Circumstances of Offense

The facts underlying the charge occurred two days after unknown individuals murdered defendant's son in Chardón Avenue in San Juan, Puerto Rico.[3] See, Transcript of the De Novo Hearing held before the undersigned on May 28, 2019 ("Transcript") at p. 25.[4] To that end, the government proffered that federal and state agents were conducting surveillance of the deceased's apartment in Isla Verde, P.R. when they saw a group of persons later identified as the defendant, the defendant's brother (co-defendant Edgardo Vélez-Ramos (2)), the widow and one Elvin Joel arrive in a pick-up truck. Transcript at pp. 32-33. The defendant and the widow left the area and went up to the apartment. Id. at p. 33. At some point, other individuals, most of whom are also

---

[3] As reported by the government, the deceased was a supplier of cocaine and his murder drug-trafficking related. Transcript at p. 32.

[4] District Judges have Court Reporters as part of their staff when presiding over the different proceedings held before them. Among other responsibilities listed in 28 U.S.C. § 753, reporters are responsible for promptly transcribing, when requested, the original record of all proceedings held before the judge and prepare and file a certified transcript of the same. The transcript is available, following applicable rules and regulations, to parties who have arranged payment. And it is also available at the request of a judge, at no charge to the court. District Judges have access to the rough drafts of the transcripts before a formal request is made by any interested party, or the transcript is filed for the record in the court.

charged in the Indictment,[5] arrived in two different vehicles. Id. at pp. 33-34. Those other individuals talked or chat in a friendly manner with defendant's brother, and then all went up to the apartment. Id. The agents followed the group upstairs. Id. at p. 34.

Once they knocked and announced, the agents in the perimeter informed those in the hallway in front of the apartment that firearms had been thrown outside the balcony. Id. The agents entered the apartment and encounter defendant's brother in the hallway and defendant inside one of the bedrooms "by a bookbag that contained the Aeroprecision rifle-type pistol" charged in the Indictment. Id. at pp. 34-35. Inside the bag were two magazines and 74 rounds of ammunition. Id. at p. 35.[6] Because the government concluded that defendant knew his brother was in possession of a rifle, he was charged, as a convicted felon, with one count of illegal possession of the Aeroprecision rifle-type pistol and the 74 rounds of 5.56 caliber ammunition (Docket No. 25).

Defendant proffered that, after the murder of his son, he traveled to Puerto Rico to identify and bury his body, having boarded the plane without even a toothbrush, with grief and very bereft by the situation. Transcript at pp. 25 and 43. His brother and the widow picked him up at the airport and took him to the deceased's apartment in Cond. Castillo del Mar in Isla Verde to get a suitcase belonging to Christian, a friend of the deceased. Id. at p. 26; Docket No. 94, p. 4, n.8; Docket No. 98, p. 2. Defendant and the widow went upstairs as he needed to use the bathroom.

---

[5] To wit, defendants Christian Román-Ortiz (3), Axel J. Ocasio-Jackson (4), and Carlos A. Rodriguez-Suárez (5). Transcript at p. 33.

[6] The government added that defendant's brother was also in possession of a Glock with three magazines. Id. at p. 36. Co-defendant Roman-Ortiz (3), was carrying fully automatic firearms that were loaded; co-defendant Ocasio-Jackson (4) had a firearm with one magazine armed and three additional magazines in the fanny pack he was carrying; and co-defendant Rodriguez-Suárez (5) was also possessing a firearm, one 9 mm magazine with 20 rounds and another magazine of 20 rounds in his fanny pack. In all, they were heavily armed. Transcript at pp. 36 and 37. At the time, Mr. Edgardo Vélez-Ramos had a permit to carry firearms. Id. at pp. 26, 35, 42. On April 22, 2019, upon de novo review of the U.S. Magistrate Judge's determination, the court released him on bail pending trial. See, Memorandum and Order at Docket No. 94 and Order Setting Conditions of Release at Docket No. 101.

Transcript at p. 26. Around that time, Christian arrived at the apartment with two friends. Docket No. 94, at n.4. When the agents knocked and announced their presence, it was *defendant* who opened the door. Id. at p. 41. He claimed he was not aware of other people throwing rifles because he was in front of the door. Id.[7] He explained that the apartment is small.[8] And, because about "15 agents stormed" into a small space, he was displaced into the room where his brother had stored the rifle inside a closet. Id.[9] If convicted, the defendant faces up to 10 years of imprisonment.[10] The offense is serious, but the underlying circumstances do not make a strong case for defendant's detention pending trial.

2. Weight of Evidence

The government referred to the existence of testimony, video recordings of the surveillance, pictures, and backpacks containing firearms. From the description proffered, defendant was not placed in direct contact with either ammunition or firearms. The government stated that all of the individuals charged were together, including defendant's brother with the rifle-type pistol protruding from the back, going up to the stairs. Transcript at pp. 33-34, 44-45. Yet the defendant went upstairs to the apartment with the widow before the other individuals did so.

---

[7] Defendant also proffered that he had no knowledge of the felons that were with him, he did not invite them to the apartment, and he had no knowledge they had weapons with them. Transcript at p. 42.

[8] Defendant's counsel described the one-bedroom apartment as a property with a 10x10 room, a 10x12 living room, an 8x10 tiny kitchen on the left side and a single corridor that "disembarks" in the room where defendant was found. Transcript at p. 47. She later clarified that between 8 and 12 agents entered the apartment, according to defendant's independent investigation. Id. at p. 48. The government claimed they were 6 agents, but that other agents remained outside on the perimeter. Id. at p. 49. The government, however, did not challenge defendant's description of the apartment.

[9] Defendant argued it is "incredible" to be considered in possession of a firearm in a room where he got into only after being displaced through the hallway by the agents. Transcript at p. 41. The government countered that what is incredible is defendant's theory of what happened at the apartment and that it makes "no sense" because if nobody was going to stay at the apartment and were going to be there briefly, defendant's brother did not have to put a bag inside the bedroom closet. Transcript at pp. 44-45.

[10] For present purposes, the court is entitled to rely on maximum statutory terms of imprisonment. United States v. Moss, 887 F.2d 333, 338 (1st Cir. 1989).

The government argued that defendant knew of that particular firearm as it was in the car when he was picked up at the airport. Id. at p. 45. From the proffer, that knowledge is not apparent.

    3. History and Characteristics of the Defendant

First, defendant is 53 years of age (Pretrial Services Report, pp. 1-2). For the last year he has resided in Tampa, Florida. Before, he lived twenty years in his mother's house at Parcellas Pastillo, Ponce, P.R. He has two full siblings and three paternal siblings. Id.[11] He has been legally married to Damaris Jiménez-Morales, for two (2) years. Together, they have one daughter. Id. at p. 2. He has two (2) other children, in addition to the deceased, from previous relationships. Id. For a time, he lived in Mexico with a former partner.

Second, defendant has a high school diploma from a vocational school in Ponce. He enrolled in the Catholic University of Puerto Rico but did not obtain a degree. Id. Even though he started a course in computers, did not finish it. He has a valid passport. However, he is not fluent in English. Id. At the time of his arrest, he was working with a Slot Machine Company. Id. at p. 2.

Third, defendant has one prior conviction, a 1997 federal case of conspiracy with intent to distribute controlled substances. Id. at p. 4. He was sentenced in 1999 to 57 months of imprisonment and a supervised release term of four years. His supervise release commenced on June 22, 2001 and expired on June 21, 2005. He served his time and complied with all of his supervised release conditions with no complaints, violations or admonishment. Before his arrest

---

[11] One of which is co-defendant Edgardo Vélez-Ramos (2).

here, 13 years elapsed from the date he completed supervised release without any other legal predicament.[12] Defendant's history and characteristics favor release.

### 4. The Danger Posed to the Community by Defendant's Release

Defendant contends that several factors weigh in favor of bail and in support of the conclusion that he is not a danger to the community. In particular, he claims that: (1) he has family support – his wife is willing to serve as his third-party custodian (Transcript at p. 21); (2) the government's version of the facts is highly disputed and he has a reasonable explanation as to why he was in the room where his brother's bag with the firearm was found at the time of his arrest; and (3) he is highly regarded by the community.[13] He also offered a variety of restrictive conditions to help mitigate any risk of non-appearance and danger to the community (Docket No. 98 at pp. 13-14).

With the exception of defendant's explanation as to why he was found in the room where the arm was located, and that he is a prohibited person, the government does not question the factors that defendant has mentioned. It reiterates that defendant was aware that his brother was in possession of the firearm, knew of the other individuals present in the apartment were carrying firearms and knew what was happening. In this way, it claims defendant is a danger to the community. Transcript at p. 45.[14]

---

[12] At the hearing, defendant's wife, who offered to serve as a third-party custodian, testified that she has a license to possess and carry firearms since 2014. Transcript at p. 10. She currently owns a 9mm Glock and a Draco rifle. Id. at pp. 14 and 16. She said she is willing to surrender her firearms while acting as a third-party custodian, if the court decides to grant bail to Mr. Vélez-Ramos. She added that, while living in Puerto Rico, the 9 mm was safely stored in a safe box located in their house in Pastillo Ponce, and Mr. Vélez-Ramos knew the combination of the safe box but never attempted to open it, use or touch the firearm. Id. at p. 20. The rifle is at an arms establishment called RS Armeria in Juana Diaz. Id. at pp. 10 and 12.

[13] See, Docket No. 98-1, for character letters from persons in the community support of defendant's request for bail.

[14] Measures must be taken to assess the risk of flight and danger to the community on a current basis. See, Hayward v. Marshall, 512 F.3d 536, 544, 546 (9th Cir.2008) (old convictions are "no evidence" that release "would unreasonably endanger public safety."); Ngo v. INS, 192 F.3d 390, 398 (3d Cir.1999)("The assessment of flight risk and danger to the community must be made on a current basis").

Convicted felons are regarded as persons who pose serious risks of danger of the community. United States v. Dillard, 214 F.3d 88, 95 (2d Cir. 2000)(so noting). After careful consideration of all relevant factors, however, the court believes that defendant's release would not pose such a danger.

### III. CONCLUSION

Having taken into account the totality of the record as presented, the court concludes that the government has not shown, by clear and convincing evidence, that no condition or combination of conditions will assure the safety of the community if defendant is released; and, by clear and convincing evidence that no condition or combination of conditions will reasonable ensure defendant's appearance in court. Defendant Ricardo Vélez-Ramos, is hereby granted bail under the following conditions:

1. Defendant shall not violate federal, state, or local law while on release;

2. Defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a;

3. Defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number;

4. Defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose;

5. Defendant shall execute a $40,000.00 bond ($10,000.00 cash and $30,000.00 secured by the defendant's mother real estate property located at Parcelas Pastillo, Calle Librado Net 721, Ponce Puerto Rico;

6. The defendant is placed in the custody of Mrs. Damaris Jiménez-Morales, Parcelas Pastillo, Calle Librado Net 721, Ponce Puerto Rico, pending qualification by the U.S. Probation Officer;

7. Defendant shall:

   a. submit to supervision by and report for supervision to the U.S. Probation Office.

   b. continue or actively seek employment.

   c. maintain or start an education program.

   d. surrender any passport to the U.S. Probation Office.

   e. not obtain a passport or other international travel document.

   f. abide by the following restrictions on personal association, place of abode, or travel: Shall reside at the TPC address; shall not leave the jurisdiction of this District without first obtaining written permission from the court.

   g. avoid all contact directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution.

   h. refrain from possessing a firearm, destructive device, or other dangerous weapons. There shall be no firearms at the defendant's residence. Therefore, defendant's wife, shall surrender her firearms and submit a certificate to the U.S. Probation Officer before defendant is released on bail.

   i. refrain from excessive use of alcohol.

   j. refrain from unlawful use or possession of narcotics or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

k. report as soon as possible, to the U.S. Probation Office or the Supervising Officer any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

l. Exception: The Chief U.S. Probation Officer or his designee, may authorize temporary changes of address and overseas travels to the mainland U.S. only, not exceeding 15 calendar days, provided the U.S. Attorney has no objection to it. If objected, the request will have to be made in writing to the court.

m. Shall not enter any airport or pier with the EXCEPTION stated above.

**SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of June, 2019.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge